COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Elder and Fitzpatrick

FENCO, INC.
AND
PMA INSURANCE COMPANY                          MEMORANDUM OPINION[*]
                                                  PER CURIAM
v.    Record No. 1604-96-3                     DECEMBER 17, 1996

DAVID W. BOTTENFIELD

            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                  (Ruth Nathanson; Midkiff & Hiner, on brief),
                  for appellants.

                  (George L. Townsend; Chandler, Franklin &
                  O'Bryan, on brief), for appellee.


      Fenco, Inc. ("employer") and PMA Insurance Company ("the

insurer") contend that the Workers' Compensation Commission

("commission") erred in denying their application requesting that

the commission vacate its September 19, 1995 award and amend

David W. Bottenfield's ("claimant") average weekly wage.  Upon

reviewing the record and the briefs of the parties, we conclude

that this appeal is without merit.  Accordingly, we summarily

affirm the commission's decision.  Rule 5A:27.

      Claimant sustained a compensable lower back injury on

August 4, 1995.  On August 21, 1995, employer sent wage

statements to the commission for it to calculate claimant's

average weekly wage.  On that same date, employer executed a

Memorandum of Agreement, agreeing to pay claimant compensation

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

based upon an average weekly wage of $862.30.  Claimant executed the Memorandum of Agreement on September 6, 1995.  The insurer's representative, Greg Robinson, informed the commission that he received the commission's calculation of claimant's average weekly wage in the amount of $511.69 on September 8, 1995.  On September 13, 1995, Robinson executed the Memorandum of Agreement on behalf of the insurer and forwarded it to the commission.  The Memorandum of Agreement contained the words, "Corrected Average Weekly Wage and Comp. Rate."  On September 19, 1995, the commission entered an award based upon an average weekly wage of $862.30, as stated in the Memorandum of Agreement.  Neither employer nor insurer sought to withdraw the Memorandum of Agreement prior to the commission's award, nor did they seek review of the award.  On November 3, 1995 and November 28, 1995, employer filed applications seeking (a) to terminate claimant's compensation on the ground that he had returned to work and (b) a credit for overpayment due to an incorrect average weekly wage.

Employer bore the burden of proving a basis upon which the commission would have been required to vacate its September 19, 1995 award.  Unless we can say as a matter of law that employer's evidence sustained its burden of proof, the commission's findings are binding and conclusive upon us.  Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).  In denying employer's request to change claimant's average weekly wage, the commission found as follows:

Despite receiving Commission calculations,

2

the employer agreed to a higher average weekly wage. To amend this, the employer would have to prove fraud, mutual mistake, or imposition. Sovran Financial Corp. v. Nanney, 12 Va. App. 1156, 408 S.E.2d 266 (1991). The claimant contends that the calculation contained in the Memorandum of Agreement is accurate. Therefore, there is clearly not a mutual mistake. The fact that the employer agreed to the claimant's calculation rather than the Commission's calculation is not in itself the basis for finding imposition. Nor is there any evidence of fraud.

The commission's findings are supported by the Memorandum of Agreement signed by employer and insurer's representative despite their knowledge that the commission's calculation of the average weekly wage differed from that stated in the Memorandum of Agreement. Contrary to the assertions of employer and insurer, no evidence established that the insurer did not have knowledge of the commission's wage calculations before its representative executed the Memorandum of Agreement and forwarded it to the commission. Robinson received the commission's calculations on September 8, 1995 and he did not execute the Memorandum of Agreement until September 13, 1995. Because no evidence showed that the Memorandum of Agreement was procured by fraud, mutual mistake, or imposition, we cannot say as a matter of law that the commission erred in refusing to vacate its award and to amend claimant's average weekly wage.

For these reasons, we affirm the commission's decision.

Affirmed.

3